# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

GAIL LUCILLE INGHAM and ROBERT
INGHAM, CASWALYN LANDRY,
TAMMY RAE BAXLEY, LIBERTY
VEGAS, ON BEHALF OF PAULA
BOHANON, SUSAN MARIE COLVIN,
RHONDA LANELLE DUNN and EUGENE
DUNN, JOHANNA JANE GOLDMAN and
LAINE GOLDMAN, MARCIA L.
HILLMAN, STACEY LYN HOMMEL,
DEBRA ANN HUNT and PAUL HUNT,
SHANNON L. JONES and RYAN JONES,
RONDA LYNNE JONES and NORMAN
JONES, MARY JILL KAYTON and TODD
S. KAYTON, KENNETH LEAK, ON
BEHALF OF DEBORAH K. LEAK,
KAY LUBOLD, STEPHANIE MARTIN and
KEN MARTIN, CECILIA A. MARTINEZ,
DEBRA LOUISE MOBERG and GARY
MOBERG, MARCIA ELIZABETH
OWENS, JANIS GAIL OXFORD and
WILLIAM OXFORD, DONNA LYNN
PACKARD and ROBERT PACKARD,
KATHLEEN REILLY and JOHN REILLY,
JANET SUE RIEGSECKER, TONI S.
ROBERTS, OLGA P. SALAZAR,
PAMELA DIANNE SCARPINO,
ANDREA SCHWARTZ-THOMAS and
BRYAN THOMAS, MELISSA ANN SMITH
and TERRY SMITH, KATHLEEN
CHRISTENSEN SMITH, MONICA
SHERISE SWEAT and GREGORY SWEAT,
ELSIE TEXIDOR, ON BEHALF OF
GENEANN APODACA, ELAITA
ROLAINE WALKER and MARVIN
WALKER, BERLINDA WALKER,
BONNIE LOUISE WAMSLEY,
JAMIE BEAGLE WEBSTER and BJ
WEBSTER, CAROLE WILLIAMS AND
TALMADGE WILLIAMS, REBA NELL
WILLIAMS, CHRISTINA WYCKOFF,
MITZI DENISE ZSCHIESCHE,

Case No: 4:17-cv-01857

**JURY TRIAL DEMANDED**

KIMBERLY ANN VILLNEUVE,
ROBERTA B. WEINER and MICHAEL
WEINER, ELSA E. ROSALES, FRANCES
CAROLYN FULLER, SHANNON RENAE
PELL and ERIK PELL, VAN WALKER, ON
BEHALF OF SHERRI ELLEN WALKER,
BRIAN MEHL, ON BEHALF OF
REBECCA J. MEHL, RONALD DAHLY,
ON BEHALF OF FRANCIE ROCHELLE-
HORN DAHLY, ANNETTE M. KOMAN
and ALLAN KOMAN, ROBIN LOU
KANTNER, ANNIE M. GROOVER and
MARTIN MAILLARD, RAMONA
GONZALEZ, JODY LEANN HAYES,
GERALDINE NEWMAN, GLENDA
NORTH, ON BEHALF OF CLORA MAE
WEBB, KAREN DENISE HAWK and
MARK E. HAWK, MICHAEL ABELSON,
ON BEHALF OF LYNN C. ABELSON,
KRYSTAL J. KIM, SHEILA D. BROOKS,

     Plaintiffs,

v.

JOHNSON & JOHNSON,
JOHNSON & JOHNSON CONSUMER
COMPANIES, INC., IMERYS TALC
AMERICA, INC. F/K/A LUZENAC
AMERICA, INC.,

     Defendants.

## NOTICE OF REMOVAL

     Defendants Johnson & Johnson ("J&J") and Johnson & Johnson Consumer Inc., f/k/a

Johnson & Johnson Consumer Companies, Inc. ("JJCI") (collectively, the "Johnson & Johnson

Defendants"), by their undersigned attorneys, hereby give notice of the removal of this action,

pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, to the United States District Court for the

Eastern District of Missouri.

This is one of dozens of cases pending in federal courts around the country, in which plaintiffs allege that the use of talc products caused their ovarian cancer. On October 4, 2016, the Judicial Panel on Multidistrict Litigation issued an order establishing MDL No. 2738, *In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation*, before Judge Freda L. Wolfson in the United States District Court for the District of New Jersey, to coordinate pretrial proceedings in these cases. The Johnson & Johnson Defendants intend to seek the transfer of this action to that proceeding, and will shortly provide the MDL Panel notice of this action pursuant to the "tag-along" procedure contained in the MDL rules.

As set forth below, federal jurisdiction exists in this action because the only plaintiffs whose presence in the suit defeats diversity jurisdiction are not subject to personal jurisdiction in Missouri. Because these non-diverse plaintiffs' claims fail for lack of personal jurisdiction, their claims should be dismissed, leaving only plaintiffs as to whom the requirements of diversity jurisdiction are fully satisfied.

On June 19, 2017, the U.S. Supreme Court ruled in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, No. 16-466, --- S. Ct. ----, 2017 WL 2621322 (U.S. June 19, 2017), in a case involving virtually identical circumstances, that specific jurisdiction is lacking over defendants with respect to claims asserted by plaintiffs whose claims have no connection to the forum where an action is commenced, regardless of whether those plaintiffs join their claims with plaintiffs whose claims have some connection with the forum. Recognizing the implications of the Supreme Court's decision for the numerous talcum powder actions pending before it, the state court recently granted a mistrial in a case involving three

plaintiffs, two of whom have no connection to Missouri.  (*See* Ex. A, *Swann v. Johnson & Johnson*, No. 1422-CC09326-01, Trial Tr. 2203-2205 (Mo. Cir. Ct. St. Louis, June 19, 2017).)

These developments support removal of the underlying action at this time.  The Supreme Court's decision in *Bristol-Myers* and the state court's subsequent mistrial order in another action involving the Johnson & Johnson Defendants constitute an "order" or "other paper" that triggers a new 30-day removal window under 28 U.S.C. § 1446(b)(3).  And the pendency of dozens of similar cases involving myriad out-of-state plaintiffs for whom jurisdiction is clearly lacking constitutes the bad faith necessary to render section 1446(c)(1)'s one-year time limit inapplicable.[1]

As grounds for removal, the Johnson & Johnson Defendants state as follows:

## NATURE OF THE ACTION

1.    This is a personal injury product liability action that includes 78 unrelated individuals from 25 different states.  Each plaintiff alleges the development of some unspecified subtype of ovarian cancer as a result of applying "talcum powder" products (including JJCI's Baby Powder® or Shower-to-Shower®) to her perineal area.  Plaintiffs allegedly developed ovarian cancer at different dates and times as a result of using different amounts of the products for different durations of time.  Plaintiffs have filed claims against three defendants: the two Johnson & Johnson Defendants and Imerys Talc America, Inc. (the alleged talc supplier for the Johnson & Johnson Defendants).  Of the 78 individual plaintiffs, ***74 are completely diverse from***

---

[1]    The Johnson & Johnson Defendants note that while other, similar cases have also previously been remanded, several courts have recently stayed such cases to allow the MDL judge to decide jurisdictional issues. *See* Order at 1-2, *Rice v. Johnson & Johnson*, No. 4:17-cv-1224-CDP, ECF No. 22 (E.D. Mo. Apr. 10, 2017); Order at 1-2, *McNichols v. Johnson & Johnson*, No. 4:17-cv-1473-JAR, ECF No. 30 (E.D. Mo. May 31, 2017); Order at 1-2, *McBee v. Johnson & Johnson*, No. 4:17-cv-1496-JAR, ECF No. 33 (E.D. Mo. June 9, 2017); Order at 1-2, *Thompson v. Johnson & Johnson*, No. 4:17-cv-1654-JMB, ECF No. 16 (E.D. Mo. June 15, 2017).

*all three named defendants*, including a single plaintiff who alleges some vague nexus with the Johnson & Johnson Defendants' contacts with Missouri, and *only five are Missouri citizens*.[2]

2.      Removal is proper based on diversity of citizenship under 28 U.S.C. § 1332(a) because the Court can and should dismiss the claims of the 73 plaintiffs with respect to whom defendants are clearly not subject to personal jurisdiction in Missouri.  These plaintiffs are not citizens of Missouri and do not allege that they bought, used or were injured by the Johnson & Johnson Defendants' products in Missouri.  Given the glaring lack of personal jurisdiction over defendants with respect to these plaintiffs, the Court should decide this issue at the outset and dismiss these plaintiffs' claims, thereby creating complete diversity.[3]

3.      The Johnson & Johnson Defendants have complied with the procedural requirements for removal, including timeliness.  The Missouri state court's mistrial order in another case involving the same defendants and the same legal issue, coupled with the Supreme Court's *Bristol-Myers* decision, confirmed that this action is removable, and the instant Notice is accordingly timely because it was filed within 30 days of the date of both orders.  28 U.S.C. § 1446(b)(3).  This Notice is also timely under 28 U.S.C. § 1446(c)(1), which provides that actions

---

[2]      To be clear, Plaintiffs Gail Ingham, Caswalyn Landry, Eleita Rolaine Walker, and Karen Denise Hawk are the only plaintiffs who allege to reside in Missouri and to have purchased and used talcum powder in Missouri. (Second Am. Pet. ¶¶ 2, 4, 48, 78).  The Johnson & Johnson Defendants note that Plaintiff Glenda North alleges that she resides in Missouri and purports to bring a wrongful death claim on behalf of a decedent's estate. (*Id*. ¶ 77).  However, this plaintiff provides no specific information about the decedent's alleged usage of "talcum powder" products or the decedent's development of ovarian cancer. *See id*.  The Johnson & Johnson Defendants acknowledge that Plaintiff Pamela Dianne Scarpino alleges to currently be a citizen of Iowa, although she further alleges that she purchased and applied talcum powder in the "States of Iowa and Missouri" and that she "developed ovarian cancer" in Missouri. (*Id*. ¶ 39).

[3]      In removing the instant case, the Johnson & Johnson Defendants acknowledge the previous remand opinions in similar cases, but respectfully suggest that the analysis in those opinions should not be applied here, or should be reconsidered given the Supreme Court's recent ruling.  Moreover, none of the courts in this District that previously remanded the talc cases substantively addressed the important (and straightforward) personal jurisdiction arguments.  The Johnson & Johnson Defendants rely upon new legal authority from the Supreme Court and other courts across the country to support their argument that:  (1) the Court should consider the simple issue of personal jurisdiction before subject-matter jurisdiction; and (2) personal jurisdiction is lacking in circumstances exactly like those presented here.

may be removed more than one year from filing in cases of bad faith.  As set forth below, plaintiffs' continued filing of cases involving numerous plaintiffs for whom jurisdiction is lacking represents a concerted forum-shopping effort to avoid inclusion in the federal MDL proceeding by seeking to evade fundamental principles of due process, which constitutes the bad faith necessary to render section 1446(c)(1)'s one-year time limit inapplicable.

**I.     REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT-MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.**

4.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because this is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest.

**A.     The Parties Over Which The Court Has Personal Jurisdiction Are Diverse.**

5.     The Johnson & Johnson Defendants are, and were at the time plaintiffs commenced this action, corporations organized under the laws of the State of New Jersey with their principal places of business in the State of New Jersey, and are therefore citizens of the State of New Jersey for the purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

6.     Imerys is, and was at the time plaintiffs commenced this action, a corporation organized under the laws of the State of Delaware with its principal place of business in the State of California, and is therefore a citizen of the States of Delaware and California for the purposes of determining diversity.  *Id.*

7.     Five of the 78 plaintiffs allege that they are citizens of Missouri (Gail Lucille Ingham, Caswalyn Landry, Eleita Rolaine Walker, Glenda North, Karen Denise Hawk.  (Second Am. Pet. ¶¶ 2, 4, 48, 77, 78.)

8.     Two of the 78 plaintiffs allege that they are citizens of New Jersey (Debra Louise Moberg, Annie M. Groover).  (*Id.* ¶¶ 27, 72.)

6

9.    Two of the 78 plaintiffs allege that they are citizens of California (Johanna Jane Goldman, Sheila D. Brooks).  (*Id.* ¶¶ 10, 82.)

10.    None of the remaining plaintiffs alleges that he or she is a citizen of California, Delaware, or New Jersey, the three states of which defendants are citizens for diversity purposes. Accordingly, 74 of the 78 plaintiffs are completely diverse from all three named defendants.

**B.    The Court Should Dismiss The Claims Of All Plaintiffs Whose Claims Are Unrelated To Missouri, Creating Complete Diversity.[4]**

11.    Removal is proper based on diversity of citizenship under 28 U.S.C. § 1332(a) because complete diversity exists between defendants and the only plaintiffs asserting claims that give rise to this Court's personal jurisdiction over defendants.  Only five plaintiffs in this action allege that they are citizens of Missouri, and one citizen of Iowa alleges that she used the products at issue in Missouri at some unspecified time.  The remaining 73 plaintiffs are ***not citizens of Missouri*** and allege ***no connection whatsoever between the State of Missouri and their alleged injuries***.  The Court can and should dismiss the claims asserted by those plaintiffs who allege no connection whatsoever between the State of Missouri and their alleged injuries prior to assessing the question of subject-matter jurisdiction.  Doing so would create complete diversity between every defendant and the remaining five plaintiffs, satisfying the requirements of 28 U.S.C. § 1332(a).

12.    ***First***, defendants are not subject to general jurisdiction in Missouri.  As the United States Supreme Court has made clear, general jurisdiction exists over a non-resident defendant only when its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially ***at home*** in the forum State."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 754,

---

[4]    The Johnson & Johnson Defendants intend to move to dismiss the claims of all plaintiffs whose claims have no connection to Missouri for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, among other grounds.

761 (2014) (emphasis added) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  A corporation generally is "at home" only in its place of incorporation and principal place of business.  *Id.* at 760; *see also Sonera Holding B.V. v. Cukurova Holding A.S*, 750 F.3d 221, 223 (2d Cir. 2014) (stating that *Daimler* "reaffirms that general jurisdiction extends beyond an entity's state of incorporation and principal place of business only in the **exceptional case** where its contacts with another forum are so substantial as to render it 'at home' in that state") (emphasis added).  As the Supreme Court more recently reiterated, "in-state business . . . does not suffice to permit the assertion of general jurisdiction."  *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017); *see also State ex rel. Norfolk Southern Railway Company v. Dolan*, 512 S.W.3d 41, 48 (Mo. Feb. 28, 2017) ("Norfolk's activities in Missouri are only a very small part of its overall activities, and not of the nature that makes Missouri its de facto principal place of business. Missouri courts may not assert general jurisdiction over Norfolk in the underlying case.").

13.     Here, none of the defendants is incorporated or headquartered in Missouri.  (*Supra* ¶¶ 5-6.)  And plaintiffs' Petition does not contain a single allegation describing defendants' conduct in Missouri.  Accordingly, plaintiffs come nowhere close to establishing general jurisdiction under the exacting standards set forth in *Daimler* and its progeny.

14.     **Second**, defendants are also not subject to specific jurisdiction in Missouri as to the claims of the plaintiffs who do not allege that their claims arose from defendants' alleged conduct in Missouri.  Specific jurisdiction can only be exercised consistent with due process where the defendant's in-state activities have "'g[iven] rise to the liabilities sued on.'"  *Daimler*, 134 S. Ct. at 761 (citation omitted); *see also Denton v. Air & Liquid Sys. Corps.*, No. 13-cv-1243-SMY-DGW, 2015 WL 738659, at *1 (S.D. Ill. Feb. 19, 2015) ("Specific jurisdiction arises

where an out-of-state defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.") (internal quotation marks and citation omitted); *Guillette v. PD-RX Pharm. Inc.*, No. 5:15-cv-00564-R, 2016 WL 3094073, at *5 (W.D. Okla. June 1, 2016) ("Plaintiffs must show some 'true causal element' between the defendants' contacts and the litigation.") (citation omitted).[5]

15.      The United States Supreme Court's recent ruling in *Bristol-Myers Squibb*, 2017 WL 2621322, confirmed that specific jurisdiction is lacking over defendants with respect to product-defect claims asserted by plaintiffs whose claims have no connection to the forum where an action is commenced, regardless of whether those plaintiffs join their claims with plaintiffs whose claims have some connection with the forum. In *Bristol-Myers*, more than 600 plaintiffs, most of whom were not California residents, sued Bristol-Myers ("BMS") in state court. BMS moved to dismiss the nonresidents' claims on the ground that the court lacked personal jurisdiction. On appeal, the California Supreme Court concluded that the trial court did have specific personal jurisdiction over the claims, finding "'BMS's extensive contacts with California,'" combined with the fact that the "claims of the nonresidents were similar in several ways to the claims of the California residents" sufficient to "permit the exercise of specific jurisdiction." *Id.* at *5 (citation omitted).

16.      The United States Supreme Court reversed, rejecting the California Supreme Court's approach as "resembl[ing] a loose and spurious form of general jurisdiction." *Id.* at *8.

---

[5]      Under Missouri's long-arm statute, a party submits to jurisdiction in Missouri "as to any cause of action arising from," *inter alia*, the "transaction of any business" or "commission of a tortious act" in Missouri. Mo. Rev. Stat. § 506.500.1. The non-Missouri Plaintiffs' claims do not arise out of any transaction or act in Missouri. Moreover, the long-arm statute "operates within the specific categories enumerated in the statutes to the full extent permitted by the Due Process Clause." *N.C.C. Motorsports, Inc. v. K-VA-T Food Stores, Inc.*, 975 F. Supp. 2d 993, 998 (E.D. Mo. 2013) (internal quotation marks and citation omitted). Because due process is not satisfied as to the plaintiffs whose claims did not arise in Missouri, the long-arm statute need not be considered.

It further criticized the holding for failing to "identify[] any adequate link between the State and the nonresidents' claims." *Id.* at *8. As the Court explained:

> the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California – and allegedly sustained the same injuries as did the nonresidents – does not allow the State to assert specific jurisdiction over the nonresidents' claims. . . . This remains true even when third parties (here, the plaintiffs who reside in California) can bring claims similar to those brought by the nonresidents. . . . What is needed – and what is missing here – is a connection between the forum and the specific claims at issue.

*Id.*

17.     Only one Justice – Justice Sotomayor – dissented. In so doing, she expressly emphasized the issue of joinder, contending that "[n]othing in the Due Process Clause prohibits a California court from hearing respondents' claims – at least not in a case where they are joined to identical claims brought by California residents." *Id.* at *15 (Sotomayor, J., dissenting). And she expressed concern that the ruling would "have consequences far beyond this case" because "the upshot of today's opinion is that plaintiffs cannot join their claims together and sue a defendant in a State in which only some of them have been injured." *Id.* at *17. The majority rejected these concerns. As it explained, its decision did not preclude joint actions by residents from different states "in the States that have general jurisdiction over BMS" – i.e., New York or Delaware. *Id.* at *3. But what the plaintiffs could not do is join together to sue BMS in some other state based solely on the fact that one or more of the plaintiffs resided in that state or was allegedly injured there.

18.     Lest there be any doubt as to the applicability of *Bristol-Myers* to this litigation, the Missouri state court presiding over talc cases confirmed last week that it applies to these cases, as noted above, stating that "a U.S. Supreme Court case decision was made that required

my declaring a mistrial [in a similar case]. I don't think I have any other alternative." (*See* Ex. A, Trial Tr. 2205:18-22.)

19.    So too here. Only five plaintiffs allege injuries that could possibly have arisen from the defendants' activities in Missouri. None of the remaining plaintiffs (including those from New Jersey and California) alleges ***any connection at all with Missouri***, let alone that she purchased, used or was injured by defendants' products in Missouri. As *Bristol-Myers* recognized, the mere fact that nonresident plaintiffs have joined their claims with those of five plaintiffs alleging some nexus with Missouri does not suffice to give rise to personal jurisdiction over the Johnson & Johnson Defendants with respect to their claims. Consequently, defendants are not subject to specific jurisdiction for the claims asserted by plaintiffs who allege no connection at all with Missouri. *See Bristol-Myers*, 2017 WL 2621322, at *8.

20.    ***Third***, this Court may decide the issue of personal jurisdiction before determining whether it has subject-matter jurisdiction. The Supreme Court has explained that "there is no unyielding jurisdictional hierarchy" and that after a case is removed, the federal court may decide a "straightforward personal jurisdiction issue presenting no complex question of state law" prior to deciding whether it has subject-matter jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578, 588 (1999); *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (explaining that "there is no mandatory 'sequencing of jurisdictional issues'" and that "[i]n appropriate circumstances . . . a court may dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction") (citing *Ruhrgas*, 526 U.S. at 578, 584). That is precisely what other federal courts have done, even before *Bristol-Myers* clarified the law on personal jurisdiction in multi-plaintiff cases.

21.    Notably, a court in this district took this exact approach to dismiss the claims of non-Missouri plaintiffs who failed to allege the requisite connection with Missouri to support personal jurisdiction.  *See Beard v. Smithkline Beecham Corp*., No. 4:15-CV-1833-RLW, 2016 WL 1746113, at *2 (E.D. Mo. May 3, 2016).  As here, *Beard* involved a multi-plaintiff personal injury case filed in the City of St. Louis that included the claims of multiple non-Missouri plaintiffs.  The case was removed to the Eastern District of Missouri, and the defendants promptly objected to the exercise of personal jurisdiction over them as to the claims of the non-Missouri plaintiffs.  Judge White agreed that Missouri courts lacked personal jurisdiction over the claims of the non-Missouri plaintiffs, stating:

> This Court, however, agrees with more recent judicial precedent from the United States Supreme Court and this district that have determined that more substantial contacts are required to hale a litigant into the court's forum.  The extent of Plaintiff's allegations is that GSK marketed and sold Paxil in Missouri.  These facts are much less than was alleged in *Daimler* and, therefore, personal jurisdiction cannot be found here.  Simply marketing and selling a product in a state does not make the defendant's affiliations with the state so "continuous and systematic as to render them essentially at home in the forum state." . . . . Plaintiffs have not alleged that they were sold Paxil in Missouri or that they ingested Paxil in Missouri.  In fact, Plaintiffs have not alleged any connection between Missouri and their injuries.  Plaintiffs have not alleged any facts supporting a finding of personal jurisdiction and the Court finds that such jurisdiction does not exist.

*Id.* at *2 (citations omitted).  Accordingly, Judge White granted the motion in part, severed the cases, and transferred the claims of the out-of-state plaintiffs to their home venues.

22.    A similar result obtained in an MDL court in the Northern District of Illinois.  *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, 164 F. Supp. 3d 1040 (N.D. Ill. 2016), *reconsidered in part on other grounds*, No. 14 C 1748, 2016 WL 861213 (N.D. Ill. Mar. 7, 2016).  In that case, "ten unrelated individuals from nine different states" brought suit in Missouri state court against AbbVie Inc. and Abbott Laboratories (both Delaware corporations with their principal places of business in Illinois) alleging injuries from

using the drug AndroGel. *Id.* at 1042. After the suit was removed to the Eastern District of Missouri on diversity grounds, it was transferred to the MDL proceeding in the Northern District of Illinois. *Id.* at 1043. The plaintiffs moved to remand to state court due to a lack of diversity because one of the non-Missouri plaintiffs was an Illinois citizen. *Id.* The MDL court decided personal jurisdiction before assessing its subject-matter jurisdiction because the former was "more straightforward" and did "not present a 'complex question of state law,'" while the latter was "rather complicated" due to the fraudulent misjoinder issue. *Id.* at 1045-46 (citations omitted). The court then held that Missouri lacked specific jurisdiction over the non-diverse plaintiff because he did not allege that he had purchased or used AndroGel in Missouri and the defendants' sales of AndroGel to other consumers in Missouri related to his claims "only in the abstract or by analogy." *Id.* at 1048. The court accordingly dismissed that plaintiff, creating complete diversity between the defendants and the remaining plaintiffs, and denied the plaintiffs' motion to remand. *Id.* at 1049-50; *see also, e.g.*, *In re Zofran (Ondansetron) Prods. Liab. Litig.*, No. 1:15-cv-13760-FDS, 2016 WL 2349105, at *3-5 (D. Mass. May 4, 2016) (deciding personal jurisdiction first and denying motion to remand where defendant was not subject to general jurisdiction in Missouri and non-diverse plaintiff's claims did not arise out of the defendant's contacts with Missouri); *Guillette*, 2016 WL 3094073, at *2, *5 (deciding "straightforward" personal jurisdiction issue before determining subject-matter jurisdiction and dismissing claims of non-Oklahoma plaintiffs who allegedly were injured from ingesting propoxyphene-containing products in other states); *Manning v. PD-Rx Pharm. Inc.*, No. 5:15-cv-00566-R, 2016 WL 3094075, at *2, *5 (W.D. Okla. June 1, 2016) (same); *Nauman v. PD-RX Pharm. Inc.*, No. 5:15-cv-00567-R, 2016 WL 3094081, at *2, *5 (W.D. Okla. June 1, 2016) (same).

23.    The Court should follow the same approach here.  As explained above, the personal jurisdiction issue here is straightforward because, under binding Supreme Court precedent, no defendant is subject to general jurisdiction in Missouri, and Missouri courts do not have specific jurisdiction over defendants as to the claims of the 73 plaintiffs who do not allege that their claims arose from defendants' alleged conduct in Missouri.  Accordingly, the Court should rule on this straightforward issue first and dismiss those plaintiffs' claims, creating complete diversity of citizenship between defendants and the remaining plaintiffs.

C.    **The Amount in Controversy Exceeds $75,000.**

24.    Plaintiffs allege that each of them developed ovarian cancer as a result of applying "talcum powder" products to her perineal area.  They also claim that they were "injured catastrophically, and have been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort and, economic damages."  (*See, e.g.*, Second Am. Pet. ¶ 119; *see also id.* ¶ 133 (claiming that plaintiffs "were caused to incur medical bills, lost wages, and conscious pain and suffering"); *see also id.* ¶¶ 153-58 (claiming damages for negligent misrepresentation, including "severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care and comfort, and economic damages").)  Plaintiffs also request punitive damages (*id.* ¶¶ 150-52) which are included in the amount in controversy.  *See Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount.").

25.    Where, as here, plaintiffs allege serious bodily injuries and/or chronic or permanent medical conditions, courts have readily found that the amount-in-controversy requirement is satisfied.  *See, e.g.*, *Allmon v. Walgreens Co.*, No. 4:09 CV 1151 DDN, 2010 WL 1292172, at *1 (E.D. Mo. Apr. 5, 2010) (holding amount-in-controversy requirement satisfied

where plaintiff alleged "extreme weight loss, stunted growth, menstrual problems, ovarian cysts, and diabetes"); *Quinn v. Kimble*, 228 F. Supp. 2d 1038, 1041 (E.D. Mo. 2002) (finding that a jury could award more than $75,000 "given that plaintiffs suffered head, neck, and back injuries; incurred medical expenses and will incur further such expenses; have permanent, progressive, and disabling injuries;" and alleged lost wages).

## II.     THE JOHNSON & JOHNSON DEFENDANTS HAVE COMPLIED WITH ALL REMOVAL PROCEDURES.

### A.     The Removal Is Timely.

26.     Under 28 U.S.C. § 1446(b), if an action is not removable as filed, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order *or other paper from which it may first be ascertained that the case is one which is or has become removable*." 28 U.S.C. § 1446(b)(3) (emphasis added).

27.     This Notice of Removal is timely filed within 30 days of the "order or other paper from which it may first be ascertained that the case is one which is or has become removable" – specifically, the June 19, 2017 decision in *Bristol-Myers* and the Missouri trial court's concomitant findings in another talcum powder case, *Swann*, that because the pleadings did not raise any issues that would distinguish *Swann* from *Bristol-Myers*, a mistrial was warranted. (*See* Ex. A, Trial Tr. 2205:18-22.) As the state court explained, "Judge Alito focused on the lack of allegation[s] in th[e] pleadings" in *Bristol-Myers* tying the defendant's forum-related contacts with the nonresident plaintiffs' claims. (*Id.* 2204:2-7.) "With that," the court proceeded "to . . . declare a mistrial," noting that "I don't think there's prudently anything else I can do in this circumstance." (*Id.* 2205:3-5; *see also id.* 2205:18-22 ("So my intention is to -- when the jury

gets here tomorrow, is explain to them that a U.S. Supreme Court case decision was made that required my declaring a mistrial. I don't think I have any other alternative.").)

28.     Courts have recognized that "a decision by a court in an unrelated case, but which involves the same defendant, a similar factual situation" and has implications for removal in other cases "can constitute" and "order" or "other paper" for purposes of § 1446(b). *Green v. R. J. Reynolds Tobacco Co.*, 274 F.3d 263, 267-68 (5th Cir. 2001) ("[H]ere[,] the defendants . . . were all defendants in the *Sanchez* case, which involved a similar factual situation and legal conclusion. . . . Although *Sanchez* did not explicitly discuss removal, the effect of the decision" is that "these defendants cannot be sued under Texas law[,]" rendering it "an 'order' for purposes of § 1446(b) removal in this case[.]"); *see also Jackson v. E-Z-Go Div. of Textron, Inc.*, No. 3:12-CV-154-H, 2012 U.S. Dist. LEXIS 90531, at *8 (W.D. Ky. June 29, 2012) ("Whether considered an 'order' or 'other paper,' the [non-removing defendants'] bankruptcy discharge [in another proceeding] initiated a new thirty-day period in which Textron could remove.").[6]

29.     The Circuit Court's mistrial ruling in *Swann*, coupled with the Supreme Court's ruling in *Bristol-Myers*, easily satisfies these standards. Both *Swann* and the present case involve the same defendants and an indistinguishable factual scenario with respect to the fundamental

---

[6]     While the Eighth Circuit distinguished *Green* in a subsequent case, it did so on grounds that are not implicated here. *See Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 969-971 (8th Cir. 2007); *see also Collora v. R.J. Reynolds Tobacco Co.*, 428 F. Supp. 2d 1018, 1022 n.2 (E.D. Mo. 2006) (explaining that *Green* is "distinguishable from the instant case . . . because the defendants in the [intervening Eighth Circuit decision] and [the present case] are not the same, and federal jurisdiction should not be extended beyond the narrow reasoning of the Fifth" Circuit). Specifically, as the Court of Appeals explained, in *Green* "the defendant seeking to remove was also a party in the separate case which generated the decision creating a basis for federal jurisdiction," and "the defendant also had timely asserted the same basis for removal on which it later ultimately succeeded." *Dahl*, 478 F.3d at 969-70. Here, in contrast to *Dahl* – and just as in *Green* – the mistrial ruling in *Swann* that has triggered defendants' removal occurred in this very proceeding. In addition, although removing defendants have not previously removed this petition, at the time this petition was filed defendants had repeatedly but unsuccessfully attempted to remove petitions in other cases containing similar allegations concerning talc products on the same jurisdictional theory – i.e., that complete diversity of jurisdiction exists when the plaintiffs for whom personal jurisdiction is lacking are dismissed. Removal was not sought in connection with this action based solely on that prior record of removals. Because defendants had previously removed other petitions on a theory that *Bristol-Myers* has now vindicated, defendants should be permitted to remove this action as well.

personal jurisdiction question. The clear "effect" of that order and the Supreme Court's *Bristol-Myers* ruling is that specific jurisdiction is lacking over the Johnson & Johnson Defendants with respect to claims asserted by the non-Missouri plaintiffs, which have no connection to the forum. Accordingly, the Notice should be deemed timely under 28 U.S.C. § 1446(b).

30.     This Notice is also timely under 28 U.S.C. 1446(c)(1). Under that section, an action may not be removed after one year from the date of commencement "unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). The "Eighth Circuit has not yet furnished a standard for the 'bad faith' exception under section 1446." *Jackson v. C.R. Bard, Inc.*, No. 4:17-CV-974 (CEJ), 2017 WL 2021087, at *2 (E.D. Mo. May 12, 2017). However, "[t]he 2011 amendments to § 1446 were intended to stop . . . gamesmanship and forum shopping." *Hill v. Allianz Life Ins. Co.*, 51 F. Supp. 3d 1277, 1282, 1283 (M.D. Fla. Oct. 6, 2014) ("Plaintiff's attempt to 'restrict' the amount in controversy to avoid removal constitutes bad faith.").[7]

31.     That is precisely what plaintiffs have attempted here. As set forth above, plaintiffs continue to bring these sprawling lawsuits involving out-of-state plaintiffs in Missouri state court, where personal jurisdiction is clearly improper, in an attempt to evade inclusion in the federal MDL proceeding. This blatant attempt to concentrate the overwhelming majority of talcum powder lawsuits in a single, plaintiff-friendly state court based on a theory of personal jurisdiction squarely rejected by the Supreme Court in *Bristol-Myers* constitutes the bad faith necessary to render section 1446(c)(1)'s one-year time limit inapplicable. Moreover, applying

---

[7]     The Johnson & Johnson Defendants acknowledge that a handful of district courts within the Eighth Circuit have taken a more restrictive view of bad faith under Section 1446, finding that "[t]he 'one year limit is not obviated by considerations of fairness, equity, or some other basis for ascertaining what seems "right," but only by bad faith.'" *Jackson*, 2017 WL 2021087, at *2 (quoting *Bush v. State Farm Fire & Cas. Co.*, No. 13-0550-cv-w-ods, 2013 WL 3755776, at *1 (W.D. Mo. July 16, 2013)). However, in light of the overarching intent behind the bad faith exception to the one-year time limit – namely, to preclude gamesmanship and forum shopping – the approach taken by *Hill* and other courts is the better-reasoned approach.

the one-year time limit in these circumstances would be grossly unfair since the Johnson & Johnson Defendants timely but unsuccessfully asserted this basis for removal in other talc cases filed in Missouri prior to the Supreme Court's ruling in *Bristol-Myers*.  In other words, the Johnson & Johnson Defendants have diligently pursued this theory of jurisdiction, which was finally countenanced by the Supreme Court in *Bristol-Myers* earlier this month.

**B.    The Other Procedural Requirements For Removal Are Satisfied.**

32.    The Circuit Court for the City of St. Louis, Missouri is located within the Eastern District of Missouri.  *See* 28 U.S.C. §§ 105(a)(1), 1441(a).  Therefore, venue is proper pursuant to 28 U.S.C. § 93(c) because it is the "district and division embracing the place where such action is pending."  *See* 28 U.S.C. § 1441(a).

33.    Pursuant to Local Rule 81-2.03 and 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other documents on file with the Circuit Court for the City of St. Louis are attached hereto as Exhibit B.

34.    Co-defendant Imerys Talc America, Inc. f/k/a Luzenac America, Inc.'s consent to this Notice of Removal is attached hereto as Exhibit C.

WHEREFORE, the Johnson & Johnson Defendants respectfully remove this action from the Circuit Court of the City of St. Louis, in the State of Missouri, bearing the cause number 1522-CC10417, to this Court.

Dated: June 29, 2017                    Respectfully submitted,

                    **HEPLERBROOM LLC**

                    By: /s/ Beth A. Bauer
                        Beth A. Bauer, #49981
                        David M. Bays, #68880
                        M. Elizabeth Kellett, #64954
                        130 N. Main Street
                        PO Box 510

Edwardsville, IL 62025
618-656-0184
bab@heplerbroom.com
db2@heplerbroom.com
edk@heplerbroom.com

By:  /s/ Gerard T. Noce
Gerard T. Noce #27636
Thomas J. Magee, #32871
211 North Broadway, Suite 2700
St. Louis, MO 63102
314/241-6160
gtn@heplerbroom.com
tm1@heplerbroom.com

**SHOOK, HARDY & BACON LLP**

By:  /s/  Mark C. Hegarty
Mark C. Hegarty, #40995
2555 Grand Blvd.
Kansas City, MO 64108-2613
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
mhegarty@shb.com

*Attorneys for Johnson & Johnson and Johnson and Johnson Consumer Inc., formerly known as Johnson & Johnson Consumer Companies, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on this 29th day of June, 2017, a true and correct copy of the foregoing document was served upon the following via the Court's electronic notification system, electronic mail, and/or U.S. Mail, postage prepaid:

Eric D. Holland
R. Seth Crompton
Patrick R. Dowd
**Holland Law Firm, LLC**
300 N. Tucker Blvd., Suite 801
St. Louis, MO 63101
(314) 241-8111
eholland@allfela.com
scrompton@allfela.com
pdowd@allfela.com

Thomas K. Neill
**Gray, Gritter & Graham, P.C.**
701 Market St., Ste. 800
St. Louis, MO 63101-1826
P: 314-241-5620
F: 314-241-4140
tneill@grgpc.com

W. Mark Lanier
Richard D. Meadow
Evan M. Janush
Zarah Levin-Fragasso
Kathryn Rachel Lanier
**The Lanier Law Firm**
126 East 56th Street, 6th Floor
New York, NY 10022
212-421-2800 - Telephone
212-421-2878 - Facsimile
WML@lanierlawfirm.com
Richard.Meadow@Lanierlawfirm.com
Evan.Janush@lanierlawfirm.com

Lee A. Cirsch
Michael A. Akselrud
**The Lanier Law Firm**
10866 Wilshire Blvd., #400
Los Angeles, CA 90024
310-277-5100 - Telephone
310-277-5103 - Facsimile
Lee.Cirsch@lanierlawfirm.com
Michael.Akselrud@lanierlawfirm.com

Alex J. Brown
Steve Faries
**Lanier Law Firm**
6810 FM 1960 West
Houston, TX 77069
713-659-5200 – Telephone
713-659-2204 – Facsimile
Alex.Brown@lanierlawfirm.com

*Attorneys for Plaintiff*

Mary Anne Mellow
Mark A. Prost
**Sandberg Phoenix & Von
    Gontard P.C.**
600 Washington Avenue - 15th Floor

Kenneth J. Ferguson
Leslie A. Benitez
Michael R. Klatt
Jeffrey R. Lilly
**Gordon & Rees LLP**

20

St. Louis, MO 63101
(314) 231-3332
(314) 241-7604 – FAX
mmellow@sandbergphoenix.com
mprost@sandbergphoenix.com


Nancy M. Erfle
**Gordon & Rees LLP**
121 SW Morrison St, Suite 1575
Portland, OR  97204
(503) 222-1075
nerfle@gordonrees.com


Mark K. Silver
**Coughlin Duffy LLP**
350 Mount Kemble Ave.
P.O. Box 1917
Morristown, NJ 07962
P: 973-631-6045
msilver@coughlinduffy.com

816 Congress Avenue, Ste. 1510
Austin, TX 78701
P: 512-391-0197
mklatt@gordonrees.com
kferguson@gordonrees.com
lbenitez@gordonrees.com
jlilly@gordonrees.com


Ann Thornton Field
Sara Anderson Frey
April M. Byrd
**Gordon & Rees LLP**
One Commerce Square
2005 Market St., Suite 2900
Philadelphia, Pa 19103
afield@gordonrees.com


 J. Dominic Campodonico
Andrew W. Cary
**Gordon & Rees LLP**
275 Battery St., Ste. 2000
San Francisco, CA 94111
P: 415-986-5900
dcampodonico@gordonrees.com
acary@gordonrees.com

*Attorneys for Defendant Imerys Talc America, Inc. f/k/a Luzenac America, Inc.*

/s/ Beth A. Bauer